UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DAWN M. SCOVEL,                    )
                                  )
          Plaintiff               )
                                  )
v.                                )          No. 1:16-cv-456-JAW
                                  )
NANCY A. BERRYHILL,               )
ACTING COMMISSIONER,              )
SOCIAL SECURITY ADMINISTRATION,   )
                                  )
          Defendant               )

## REPORT AND RECOMMENDED DECISION

In this action, Plaintiff Dawn M. Scovel seeks disability insurance benefits under
Title II of the Social Security Act. Defendant, the Social Security Administration Acting
Commissioner, found that Plaintiff has severe impairments, but retains the functional
capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's
request for disability benefits. Plaintiff filed this action for judicial review of Defendant's
final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments,
I recommend the Court vacate the administrative decision and remand the matter for further
proceedings.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the May 29, 2015, decision of the
Administrative Law Judge (ALJ) (ECF No. 11-2).[1] The ALJ's decision tracks the familiar

---

[1] The Appeals Council found no reason to review the ALJ's decision. (R. 1, ECF No. 11-2.)

five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520.

When Plaintiff initially filed her claim, she alleged an onset date of January 1, 2008, but later amended the onset date to January 1, 2013. Plaintiff's claim is subject to a date last insured of September 30, 2014. The ALJ found that within the relevant period, Plaintiff had severe, but non-listing-level impairments, which consisted of fibromyalgia, degenerative disk disease of the lumbar spine (post-surgery), seizure disorder, migraines, bilateral carpal tunnel syndrome and cubital tunnel syndrome (post bilateral surgical release with good result), affective disorder/depression not otherwise specified, and anxiety disorder not otherwise specified. (Decision ¶¶ 3, 4.)

The ALJ further found that through the date last insured, Plaintiff had the residual functional capacity (RFC) to perform light work that required not more than occasional balancing, stooping, kneeling, crouching, crawling and climbing, and no use of ladders, ropes or scaffolds; frequent but not constant handling; no extreme cold, vibrating tools, unprotected heights or irregular terrain; and simple instructions and tasks. (*Id.* ¶ 5.) While Plaintiff's RFC would not permit her to engage in her past relevant work, in accordance with the testimony from a vocational expert, the ALJ concluded that a person with Plaintiff's RFC and vocational background is "not disabled" under the framework of the Commissioner's Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. (*Id.* ¶ 10.) The ALJ, therefore, determined that Plaintiff was not disabled within the relevant timeframe. (*Id.* ¶ 11.)

Plaintiff alleges the ALJ erred as follows: (1) he failed to consider "other evidence of record" as required by 20 C.F.R. § 404.1512 and Social Security Ruling 06-03p, specifically, the statement and report by Plaintiff's most recent former employer; and (2) he failed to weigh properly the treating source opinion of Richard Dubocq, M.D., in violation of 20 C.F.R. § 404.1527 and Social Security Ruling 96-2p.

## DISCUSSION

### A. Standard of Review

A court must affirm the administrative decision provided that the ALJ applied the correct legal standards and provided that the decision is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### B. Analysis

According to the applicable regulations, the Social Security Administration ordinarily will "give more weight" to opinions provided by treating sources than to opinions offered by non-treating sources. 20 C.F.R. § 404.1527(c)(2). In particular,

"controlling weight" is given to "a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id.* In addition, with respect to any expert opinion, "the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." *Id.* § 404.1527(c)(4). "Other factors" include "the extent to which a medical source is familiar with the other information in [the claimant's] case record." *Id.* § 404.1527(c)(6).

Consistent with the regulations, the Social Security Administration Commissioner has determined that as part of the "other evidence," the Commissioner "will consider all of the available evidence in the individual's case record," including "statements by … others about the impairment(s) and how it affects the individual's functioning." *Social Security Ruling 06-03p, Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, 71 FR 45593-03 (SSA Aug. 9, 2006). "Other sources" include employers. According to the Ruling:

> Although 20 CFR 404.1527 and 416.927 do not address explicitly how to evaluate evidence (including opinions) from "other sources," they do require consideration of such evidence when evaluating an "acceptable medical source's" opinion. For example, SSA's regulations include a provision that requires adjudicators to consider any other factors brought to our attention, or of which we are aware, which tend to support or contradict a medical opinion. Information, including opinions, from "other sources"—both medical sources and "non-medical sources"—can be important in this regard. In addition, and as already noted, the Act requires us to consider all of the available evidence in the individual's case record in every case.

*Id.*

The record before the ALJ included a statement from the president of Plaintiff's last employer, who asserted that when Plaintiff maintained a part-time position as a bookkeeper, the employer made significant accommodations to permit Plaintiff to work as a bookkeeper, including the reassignment of certain tasks to others and excusing frequent absences and unscheduled breaks. The employer ultimately determined it could not continue to absorb the "costs" associated with the accommodations, and terminated Plaintiff's employment. (Ex. 14E, R. 280 – 283, ECF No. 11-6.)

The record also included the treating source statement of Dr. Dubocq, who referenced Plaintiff's most recent employment as evidence of Plaintiff's functional limitations. (Ex. 40F, R. 945, ECF No. 11-10.) Dr. Dubocq testified at the hearing, and again cited Plaintiff's most recent employment experience as evidence to support his opinion regarding Plaintiff's lack of functional capacity. (R. 96, ECF No. 11-2.)

According to Plaintiff, the ALJ not only failed to assign appropriate weight to Dr. Dubocq's opinion, but also mischaracterized Plaintiff's recent employment as full-time. (Statement of Errors at 6 – 8.) Particularly given the factual error regarding the extent of Plaintiff's employment (full-time versus part-time work), Plaintiff contends Dr. Dubocq's statements should have been assigned greater weight. (*Id.* at 8 – 18.) Plaintiff further argues that the ALJ's emphasis on Plaintiff's activities of daily living misconstrued the record, relied on pre-onset reports, and thus cannot serve as a reasonable basis to reject Dr. Dubocq's opinion. (*Id.* at 13 – 16.)

Defendant maintains that Dr. Dubocq's source statement (Ex. 39F, ECF No. 11-10)

is not a medical opinion because Dr. Dubocq simply asserted in conclusory fashion that Plaintiff is totally disabled and "checked-off nearly every limitation listed on the form." (Response at 4, ECF No. 18.)  Because the determination of disability is an issue reserved to the Commissioner, Defendant contends the ALJ appropriately gave the opinion little weight.  (*Id.*, citing 20 C.F.R. § 404.1527(d)(1).)  Defendant also argues that "chronic Lyme disease" is not a medically determinable impairment and Plaintiff conceded at the hearing that she would proceed without reference to it as a disabling impairment.  (*Id.* at 5, citing R. 50.)  Citing the fact that Dr. Dubocq's treatment of Plaintiff focused on Lyme disease, and the fact that Lyme is not medically determinable, Defendant argues the ALJ reasonably determined Dr. Dubocq's opinions were not entitled to controlling weight.  (*Id.*, citing R. 82 – 83.)  Defendant also cites the ALJ's reliance on other evidence of record, including statements Plaintiff made to other care providers, to support the ALJ's decision to give Dr. Dubocq's opinion little weight.  (*Id.* at 6, citing, inter alia, R. 382, 368, 373, 382, 340 – 41, 454, 492, 513, 1045.)

Plaintiff's principal argument is that the ALJ did not properly credit the "other source" statement of the president of her most recent employer, given the significance of the statement to Dr. Dubocq's opinion.  In other words, Plaintiff contends the ALJ erred when he rejected Dr. Dubocq's opinion without considering and addressing the statement of Plaintiff's former employer.

Maine Disability Determination Services consulting physicians, at both the initial level and the reconsideration level, considered the relevant impairments cited by Dr. Dubocq in support of his treating source statement (Exs. 39F and 40F), and concluded that

Plaintiff was not disabled. (Ex. 1A (initial); Ex. 3A (reconsideration).) The ALJ gave great weight to the physical RFC assessments offered by Donald Trumbull, M.D., and J.H. Hall, M.D, and to the mental RFC assessments offered by Robert Maierhofer, Ph.D. and David Houston, Ph.D. (R. 33.) [2]

A review of the record, however, reveals several issues of concern. First, none of the sources upon which the ALJ primarily relied was an examining source. In addition, the ALJ appears not to have considered certain findings of the sources upon which he at least partially relied. For instance, Jonathan Siegel, Ph.D., who evaluated Plaintiff's mental health on behalf of Maine Disability Determination Services on May 20, 2013 (Ex. 16F), issued a psychological source statement (R. 534) that informed the mental RFC assessments offered by Dr. Hall and Dr. Maierhofer. Despite the significance of the statement to the mental RFC assessment upon which the ALJ relied, the ALJ did not accept Dr. Siegel's view that Plaintiff was likely to experience moderate difficulty dealing with work stress or maintaining reliability. (R. 34.) Dr. Siegel, who was consulted to assess Plaintiff's psychological symptoms, had observed that Plaintiff's "ability to demonstrate reliability is compromised largely by medical [i.e., non-psychological] issues." (Ex. 16F, R. 534.) Consistent with Dr. Siegel's observations about the "medical issues," in its initial review, Maine Disability Determination Services advised that a consultative examination was needed to assess Plaintiff's physical RFC and that Plaintiff's physical impairments

---

[2] The Maine Disability Determination Services experts did not consider more recent records related to carpal tunnel and cubital tunnel symptoms. Plaintiff, however, underwent surgery and the assessment offered by the surgeon was no need for follow up based on normal post-operative motor and sensory exams and a full range of motion. (Ex. 29F.) Plaintiff does not argue the ALJ erred with respect to his assessment of these impairments. (R. 32.)

were of primary significance to her claim. (Ex. 1A, R. 110, 112.) Maine Disability Determination Services, however, did not obtain a physical consultative examination from one of its consulting experts. Furthermore, Maine Disability Determination Services, in both its initial determination and reconsideration determination, omitted Dr. Siegel's statements regarding Plaintiff's compromised reliability. (Ex. 1A, R. 108; Ex. 3A, R. 126.)

Plaintiff nevertheless obtained her own consultative examination from Christopher Ussher, M.D., a rheumatologist, who examined Plaintiff on August 29, 2013, and noted in particular Plaintiff's complaints of chronic pain. (Ex. 22F, R. 658.) In his statement of impression, Dr. Ussher stated that Plaintiff "is disabled for her usual occupation both from a physical point of view" and because of "cognitive difficulties" secondary to fibromyalgia and/or Lyme, and potentially anticonvulsant medication. (R. 661.) The ALJ gave the Ussher opinion little weight, finding it to be a conclusory opinion because it did not offer an assessment of Plaintiff's residual functional capacity. (R. 34 – 35.)

As the result of his examinations and treatment of Plaintiff, in his source statement, Dr. Dubocq noted that Plaintiff "is totally disabled and cannot work." (R. 940 – 943.) In addition, Dr. Dubocq wrote a letter in support of his assessment (Ex. 40F) and appeared at the hearing to testify in support of Plaintiff. (R. 81 – 97.) While Dr. Dubocq testified he treated Plaintiff for Lyme disease, he also testified that fibromyalgia is a typical symptom of patients with Lyme disease. (R. 86.) With respect to Plaintiff's degree of limitation, Dr. Dubocq testified that when he made his assessment of total disability he considered that Plaintiff was unable to continue to work for most recent employer, even though she was provided a couch and allowed flexible work hours. (R. 96.) Although the ALJ found

that Plaintiff has fibromyalgia, he did not credit the Lyme disease diagnosis, finding it to be based on an unsettled diagnostic methodology.[3] The ALJ concluded that Dr. Dubocq's assessment was "in stark contrast to [Plaintiff's] contemporaneous statements to other providers regarding the extent of her daily activities." (R. 34.)

A review of the record thus reveals that the only experts who examined Plaintiff's physical capacity and offered disability opinions of record are Dr. Ussher and Dr. Dubocq, both of whom opined that Plaintiff was disabled. Although the reasons cited by the ALJ for rejecting the opinions ordinarily might withstand Plaintiff's challenge, the ALJ did not obtain an assessment from any other medical source examiner, even though other consultants suggested such an assessment would be appropriate. The failure to obtain an assessment is potentially exacerbated by the ALJ's misunderstanding of the scope of Plaintiff's most recent employment (characterizing it as full-time). (Decision ¶ 3, R. 25.)

Although the ALJ referenced Plaintiff's work as a bookkeeper, the ALJ did not reference the "other source" statement of the president of Plaintiff's most recent employer. (*Id*.) According to the statement, the employer found Plaintiff to be unreliable, even in a part-time position and even with some significant accommodations. (Ex. 14E, R. 280 – 283, ECF No. 11-6.) The statement was consistent with the other reports of Plaintiff's functioning, with the three examining source opinions, and Dr. Dubocq relied at least in

---

[3] Among other evidence cited by the ALJ, the record contains negative test results for Lyme antibodies in 2006 and 2007. (Ex. 2F, R. 310 – 313, 318, 322.) If there is positive clinical evidence of Lyme in the record, Plaintiff has not identified it. At the start of the hearing, Plaintiff offered to introduce a record from 2004 indicating a positive Lyme test. (R. 48.) The ALJ declined the offer, discussing with counsel the fact that chronic Lyme disease is regarded as an unsettled diagnosis in the medical community. (R. 50.) Plaintiff indicated a willingness "to proceed without reference to chronic Lyme as a disabling impairment." (*Id.*)

part on the statement as a basis for his medical opinion. Significantly, the ALJ did not address the "other source" statement by Plaintiff's most recent employer. Although an ALJ can consider and reject material evidence, an ALJ's findings of fact are not conclusive when material evidence not considered. *Nguyen*, 172 F.3d at 35. Logically, if an ALJ misunderstands material evidence, the findings of fact cannot be conclusive. Here, the "other source" statement regarding the scope of Plaintiff's work (i.e., full-time) and Plaintiff's reliability issues is material.[4] Because the ALJ evidently misunderstood the extent of Plaintiff's employment, because the observations of Plaintiff's most recent employer regarding Plaintiff's reliability are consistent with the examining medical sources, and because the ALJ did not address the "other source" statement, the ALJ's findings of fact cannot be considered conclusive. Accordingly, a remand for the ALJ to consider the significance of the "other source" statement in the context of the medical record is warranted.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court vacate the administrative decision and remand the matter for further proceedings in accordance with this recommended decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district

---

[4] For example, the vocational expert testified that absences preclude employment in other substantial gainful activity. (R. 101.)

court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 12th day of July, 2017.